976 So.2d 1172 (2008)
STARLINES INTERNATIONAL CORP., Appellant,
v.
UNION PLANTERS BANK, N.A., n/k/a Regions Bank, et al., Appellees.
No. 4D06-3865.
District Court of Appeal of Florida, Fourth District.
March 19, 2008.
*1173 Mark C. Holmberg of Richard M. Mogerman, P.A., Plantation, for appellant.
Frank J. Roza and David S. Garbett of Garbett, Stiphany, Allen & Roza, P.A., Miami, for appellee Union Planters Bank, N.A., n/k/a Regions Bank.
CHUMBLEY, DOUGLAS J., Associate Judge.
This is an appeal from a final summary judgment entered in favor of the Appellee, the Bank, which foreclosed its mortgage lien in the amount of $1,016,730.76 on the commercial property held by Alma Dawn O'Connell, her son, O'Con Manufacturing Inc., and Appellant, Starlines International Corporation (Starlines). Because we find that the "dragnet" clause may be unenforceable in these circumstances and that there are genuine issues of material fact, we reverse.
The relevant facts are as follows. On March 27, 2001, Alma Dawn O'Connell (Alma), her son, and their company, O'Con Manufacturing Inc., ("the Borrowers") took out a loan from Union Planters Bank, now called Regions Bank (the Bank), for $825,000.00. ("Note 1"). The note for this loan was secured by Alma's personal guaranty and by a security interest in the assets of her company. A short time later, on April 26, 2001, Alma took out another loan from the Bank for $400,000.00. ("Note 2"). The note associated with this loan was secured by a mortgage on real *1174 property owned by Alma. The mortgage was duly recorded on or about May 8, 2001.
The mortgage contained language clearly referencing Note 2:
NOW THEREFORE, to secure the payment of the Loan and such future or additional advances as may be made by Mortgagee, at its option and for any purpose, to Mortgagor or Mortgagor's permitted successor(s) in title, provided that all those advances are to be made within twenty (20) years from the date of this Mortgage (the total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed twice the original principal amount of the Loan, plus interest and any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this Mortgage with interest on those disbursements), and to secure the full and faithful performance of the covenants and agreements contained in the Note, this Mortgage and all other instruments and documents executed in connection with the Loan by Mortgagor and/or any other Obligor (the Loan Documents), Mortgagor hereby grants. . . . Mortgagee a security interest in. . . . (The Property).
In addition, Note 2 clearly contained a "dragnet clause" in Section 3 of the note which in pertinent part stated:
Security Interest. As security for the payment of this Note, and any renewals, extensions or modifications hereof, and any other liabilities, indebtedness or obligations of Borrower to Bank, however or whenever created, Borrower hereby grants to Bank a security interest in any and all collateral pledged to the Bank as set forth below and any and all collateral now or hereafter pledged to the Bank pursuant to a security agreement which provides for such security interest: (a) Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") of even date herewith executed by Borrower in favor of Bank encumbering real estate situate in Broward County, Florida, more particularly described on Schedule "A" attached hereto and by this reference made a part thereof . . . All such property and all other property securing Borrower's liabilities to Bank will hereinafter be referred to as the "Collateral". The Collateral shall also serve as security for all other liabilities (primary, secondary, direct, contingent, sole, joint or several) due or to become due which may be hereafter contracted or acquired, of each Obligor (as defined above) to Bank, whether such liabilities arise in the ordinary course of business or not. . . . [italics added].
In 2002, after the mortgage was recorded, Starlines purchased a one-half interest in the real property secured by the mortgage. Starlines was aware that Note 2 above was secured by the Mortgage but was unaware that Note 1 was also secured by the mortgage by way of the dragnet clause. After Starlines purchased the one-half interest in the real property, they entered into an agreement with Alma to share the real property and operate their respective businesses from the property. In addition, there was evidence below that Alma represented to Starlines at the time of the purchase that the real property provided security only for Note 2 and that there was no pre-existing debt secured by the mortgage.
In November 2004, the Borrowers defaulted on Note 1, and in March 2005, the Bank initiated this action against the Borrowers. In July 2005, the Bank added Starlines as a non-obligor co-defendant pursuant to its recorded interest in the *1175 real property. In response to the complaint filed by the Bank, Starlines alleged that its interest was not inferior to that of the Bank, and that as a subsequent purchaser without notice, its interest in the real property was superior to that of the Bank.
On August 8, 2006, after hearing argument for all parties, the trial court entered Final Summary Judgment of Mortgage Foreclosure and for Damages in favor of the Bank. The judgment entered foreclosed the Bank's lien on the real property in the amount of $1,016,730.76 and had the effect of completely erasing Starlines' ownership interest in the property. In so doing, the trial court found that the mortgage provided security for Note 1 by virtue of the dragnet clause in Note 2. The trial court reasoned that since the mortgage was recorded and expressly referenced Note 2, Starlines was on notice to look at Note 2, which contained the dragnet clause. The trial court stated during hearings on the motion for summary judgment that the mortgage's reference to Note 2 would place third parties on constructive notice and require them to look closely at the terms of Note 2. If Starlines had done that, it would have been put on inquiry notice as to preexisting debts that may be encompassed within the dragnet clause. Thus, according to the reasoning of the trial court, Starlines was on notice and thus found its interest in the real property inferior to that of the Bank.
The facts of the instant case provide this Court with the opportunity to revisit a somewhat controversial topic: the enforceability of boilerplate "dragnet clauses" in lending documents which purport to secure pre-existing and after-acquired debt by mortgages or other collateral. Issues surrounding dragnet clauses often pit the freedom and enforceability of contracts against the clause's potential to produce unexpected and sometimes devastating results to unsuspecting borrowers and third parties. The case law from around the nation construing these sometimes draconian clauses is legion with courts reaching various conclusions regarding their enforceability in a multitude of factual scenarios. Case law in Florida is no exception. Much of the case law on this topic seems to concern the enforceability of dragnet clauses as they may apply to pre-existing debts and obligations.
For example, the Third District in United National Bank v. Tellam, 644 So.2d 97 (Fla. 3d DCA 1994), held that dragnet clauses are unenforceable to secure pre-existing debts and obligations unless the pre-existing debts or obligations are specifically identified by name in the dragnet clause. Id. at 98. In so holding, the Third District noted that it was falling in line with a number of courts from around the country which had held the same. See, e.g., Nat'l Bank v. Blankenship, 177 F.Supp. 667 (E.D.Ark.1959), aff'd sub nom. Nat'l Bank v. Gen. Mills, Inc., 283 F.2d 574 (8th Cir.1960); Lundgren v. Nat'l Bank, 756 P.2d 270 (Alaska 1987); Wong v. Beneficial Sav. & Loan Ass'n, 56 Cal. App.3d 286, 128 Cal.Rptr. 338, 342 (1976); First Nat'l Bank & Trust Co. v. Lygrisse, 231 Kan. 595, 647 P.2d 1268 (1982). Further, in Tellam, the Third District noted that dragnet clauses could sometimes have unexpected and unintended consequences to unsuspecting borrowers. To prevent such consequences, the Third District reasoned that it would be easy to identify specifically all pre-existing debt in mortgage dragnet clauses and held that lenders should be forced to do so should they wish to secure pre-existing debts by mortgages and notes executed at a later date. See Tellam, 644 So.2d at 98-99.[1]
*1176 On the other hand, this Court has held that dragnet clauses are generally enforceable so long as the language of the clause is clear and unambiguous as to the parties' intent to secure pre-existing debt as well as after acquired debt. See Robert C. Roy Agency, Inc. v. Sun First Nat'l Bank of Palm Beach, 468 So.2d 399 (Fla. 4th DCA 1985). In Judge Barkett's dissent, however, she disagreed and noted that dragnet clauses are disfavored and should be enforced only after considering the circumstances of each case. Id. at 405 (Barkett, J., dissenting).
This case, however, presents a different situation than that presented in Robert C. Roy. In Robert C. Roy, this Court was considering a case where the lender attempted to enforce the dragnet clause against the borrower, arguing that the borrower knew the dragnet clause existed and that both the lender and the borrower intended the dragnet clause to cover pre-existing and after acquired debt. On the other hand, this case involves enforcing a dragnet clause not only against the borrower but also against a third party, Starlines, that had no involvement whatsoever with the negotiations that led up to the execution of Note 2 containing the dragnet clause. Further, this case involves a situation where Starlines could not discover that the mortgage also secured Note 1 from reviewing publicly recorded documents. Although the recorded mortgage clearly identified Note 2 and Note 2 contained the dragnet clause, Note 2 was not recorded. There is nothing in Note 2 that indicates that the dragnet clause encompassed Note 1. There was no evidence below that a review of any publicly recorded documents would have revealed that Note 1 was now secured by the mortgage that secured Note 2. Indeed, in this case, there is evidence that Starlines did what it reasonably could do when confronted with the dragnet clause in Note 2: it inquired of Alma as to whether any pre-existing debt was secured by the mortgage. According to an affidavit presented below,[2] Alma told Starlines that there was no pre-existing debt which was secured by the mortgage on the real property.[3] Despite this assertion by Alma to Starlines, the trial court enforced the dragnet clause against Starlines in this case, effectively divesting Starlines of any equity in the real property.
This result is not equitable, and clearly is one of the "unexpected consequences" of dragnet clauses as envisioned by Judge Barkett in her dissent in Robert C. Roy. We believe that when confronted with the issue of enforcing a dragnet clause against someone other than the borrower, the better rule is that set forth in Tellam. As it relates to pre-existing debt, a dragnet clause will not be enforced against someone other than the borrower unless the dragnet clause specifically identifies the pre-existing debt to be included within its terms or unless it can be shown that the third party otherwise had notice that the specific pre-existing debt at issue was to be included within the grasp of the dragnet clause.
*1177 In this case, it is undisputed that the dragnet clause in Note 2 did not identify any specific pre-existing debt. Thus, the issue now is whether summary judgment is proper on the issue of whether Starlines was on notice that Note 1 was secured by the mortgage which secure Note 2. We believe that there are genuine issues of material fact which preclude summary judgment on the issue of notice. It is clear that no recorded document reveals that Note 1 is secured by the mortgage. The mortgage does not refer to Note 1 and although there is record notice of the existence of Note 2 and its dragnet clause, Note 2 does not make any specific reference to Note 1. Thus, there seems to be no question that Starlines had no express actual notice that Note 1 was secured by the mortgage.
On the issue of implied actual notice, however, there are genuine issues of fact which foreclose summary judgment. As stated by this Court in Flanigan's Enterprises, Inc. v. Shoppes at 18th & Commercial, Inc., 954 So.2d 758 (Fla. 4th DCA 2007):
If a person has information that would lead a reasonable man to make further inquiry for his own protection, but fails to further investigate and learn what the inquiry would reasonably have uncovered, the person "must suffer the consequence of his neglect." Chatlos v. McPherson, 95 So.2d 506, 509 (Fla. 1957); Rafkind v. Beer, 426 So.2d 1097, 1099 (Fla. 3d DCA 1983)(quoting Sickler v. Melbourne State Bank, 118 Fla. 468, 159 So. 678, 679 (1935)), see also Citgo Petroleum Corp. v. Fla. E. Coast Ry. Co., 706 So.2d 383, 386 (Fla. 4th DCA 1998) (citing Chatlos).
In this case, Starlines did have information from Note 2 that there may be pre-existing debt secured by the mortgage, and thus had a duty to inquire further. Starlines did not fail to investigate further. There is evidence that Starlines did inquire of Alma as to the existence of pre-existing debt and received a negative response. The Bank takes the position that this is not sufficient inquiry, and Starlines should have consulted the Bank as to the existence of pre-existing debt. We believe there is a genuine issue of fact at least as to whether a reasonable person should have inquired further after receiving a negative response from the borrower. In short, there is a genuine issue of fact as to whether Starlines was on implied actual notice that Note 1 was secured by the mortgage, and thus, summary judgment was improper.[4]
We reverse and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
WARNER, and GROSS, JJ., concur.
NOTES
[1] The concurring opinion in Tellam went further and would require the lender to identify the pre-existing debt in both the mortgage and the note secured by the mortgage. See 644 So.2d at 99 (Cope, J., concurring).
[2] There is some dispute as to whether the trial court considered this affidavit during the multiple hearings below. In its brief, however, the Bank states that the affidavit was considered below.
[3] The affidavit also indicated that an unnamed representative from Pointe Bank also told Starlines that there was no pre-existing debt secured by the mortgage. It is unclear as to why Starlines consulted this bank but the affidavit is at least some evidence that Starlines attempted to discover the existence of pre-existing debt from someone other than Alma.
[4] In reversing the summary judgment entered below, we specifically reject Starlines' assertion that the trial court was not a neutral and detached tribunal.