# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2010

No. 09-60270

Lyle W. Cayce
Clerk

In the Matter of:  SUPERTRAIL MANUFACTURING CO., INC.,

Debtor

_____

CAL-BAY INTERNATIONAL, INC.,

Appellant

v.

SUPERTRAIL MANUFACTURING CO., INC.; MUSTAFA ATAC,

Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:08-cv-00038

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

EDITH H. JONES, Chief Judge:[*]

Supertrail Manufacturing Co., Inc. owned real estate in Florida secured by a mortgage held by Dr. Mustafa Atac.  Supertrail entered bankruptcy in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Mississippi, the property was sold, and Dr. Atac received the proceeds of that sale. After the property was sold, Cal-Bay International, Inc. sued Dr. Atac and Supertrail in bankruptcy court, claiming to have been the rightful owner of the mortgage and its sale proceeds. Supertrail and Dr. Atac moved for summary judgment. The bankruptcy court held in their favor and concluded that Cal-Bay was collaterally estopped from pursuing its claim because of a prior ruling in a Utah state court. The district court affirmed.

Although the bankruptcy court erred in its analysis, the error is harmless. The Utah court determined only whether the mortgage's assignment to Dr. Atac was authorized under Utah corporate law. Cal-Bay seeks a determination on an issue the Utah court never addressed, whether under Florida property law Dr. Atac or Cal-Bay has superior title. On this issue, the pleadings and record are sufficient to grant the motion for summary judgment for Dr. Atac. Consequently, we affirm.

## I.  BACKGROUND

In 1994, Kristol Management and Investment ("KMI") owned the mortgage in dispute which secured Supertrail's property in Palm Beach County, Florida, that was slated to become a golf course development. KMI assigned the mortgage twice: first to Dr. Atac and then to Ararat LLC (Cal-Bay's predecessor in title).[1] These conflicting assignments are the core of the dispute now before the court.

On August 12, 1994, Deborah Doherty, KMI's president, assigned the mortgage to Dr. Atac on behalf of KMI. On February 28, 1995, Dr. Atac recorded the assignment in the Palm Beach County property records. The assignment set off an internal dispute within KMI. Paul Schwenke, KMI's chairman of the board, claimed that Doherty fraudulently transferred the mortgage and lacked the authority to assign the mortgage to any party. On July 10, 1995, Schwenke

---

[1] Ararat purported to assign the mortgage to Cal-Bay on September 20, 2005.

entered a "Notice of Invalid Assignment of Mortgage" into the Palm Beach County property records, which informed title investigators of these allegations of fraud.

On January 8, 1996, under the direction of Schwenke, KMI sued Doherty in Utah court, asserting that she committed fraud against KMI and lacked the authority to assign the mortgage to Dr. Atac.[2]  Because of deficient service, Doherty did not file an answer to the complaint.  The Utah court issued a default judgement on March 26, holding that Doherty did not have authority to assign the mortgage to Dr. Atac.  On April 4, the default judgment was recorded in the Palm Beach County property records.  Doherty finally moved to set aside the default judgment on April 12.  While Doherty's motion was pending in Utah, KMI assigned the mortgage to Ararat, Cal-Bay's predecessor in title, on June 5, and Ararat recorded the assignment the next day.  On September 4, 1996, the Utah court granted Doherty's motion and vacated its default judgment.  The case went to trial.  Five years later, the Utah court ruled in favor of Doherty, finding that she had authority to assign the mortgage and that the original assignment to Dr. Atac was valid (the "Utah Judgment").  The Utah court judgment was recorded in Palm Beach County's property records on December 12, 2001.  At no time did Dr. Atac, Cal-Bay, or Ararat participate in the KMI litigation.

While KMI and Doherty litigated their dispute in Utah, Supertrail filed for Chapter 11 bankruptcy on January 4, 1996.  The bankruptcy case proceeded under the assumption that Dr. Atac owned the mortgage, and Dr. Atac was heavily involved in Supertrail's Chapter 11 case.  In September 1996, the Supertrail estate moved to sell the Palm Beach property that secured the mortgage outside the ordinary course of business.  *See generally* 11 U.S.C. § 363(b).  After several hearings, the court eventually approved the sale in 2003.

---

[2] *Kristol Management and Investment, Inc. v. Doherty*, Third Judicial District Court of Salt Lake County, No. 96-0900196-CV, which took place in Utah because KMI is a Utah corporation governed by Utah corporate law.

Under the sale order, Dr. Atac would receive the proceeds after settling some priority obligations on the property.

In March 2006, with the sale proceeds yet undistributed, Cal-Bay sued Supertrail and Dr. Atac, asserting Cal-Bay's status as the rightful owner of the mortgage and any sales proceeds. Cal-Bay claimed that while the Utah Judgment determined that Doherty had authority to assign the mortgage to Dr. Atac, Ararat was a bona fide purchaser for value without notice under Florida law.[3] Thus, even though Ararat was assigned the mortgage after Dr. Atac, Cal-Bay, through Ararat, asserted superior rights to the mortgage. Supertrail and Dr. Atac moved for summary judgment, arguing that Ararat was not a bona fide purchaser because it had constructive notice of the Utah lawsuit.

The bankruptcy court ruled *sua sponte* that Cal-Bay was collaterally estopped from pursuing its claim because the Utah court had effectively determined which party owned the mortgage.[4] The court held that Cal-Bay was also collaterally estopped by an October 18, 1996, hearing in which the bankruptcy court allegedly determined that Dr. Atac was the proper owner of the mortgage. Cal-Bay appealed and the district court affirmed without analysis. Cal-Bay now appeals to this court. During the pendency of this appeal, the bankruptcy court ordered the proceeds to be distributed. Cal-Bay objected unsuccessfully to the distribution and failed to seek a stay, and the proceeds were distributed to Dr. Atac.

## II. JURISDICTION

---

[3] *See* FLA. STAT. § 701.02(1) (2009):

An assignment of a mortgage upon real property or of any interest therein, is not good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the assignment is contained in a document that, in its title, indicates an assignment of mortgage and is recorded according to law.

[4] The Appellees did not argue this issue in their motion for summary judgment, but did raise it in their answer to Cal-Bay's complaint.

4

As an initial matter, Appellees assert that the appeal is moot. First, Appellees contend that 11 U.S.C. § 363(m) moots the appeal because the property is sold and Cal-Bay did not seek a stay. Section 363(m) does not apply, because Cal-Bay is appealing to determine which party has a superior interest to the mortgage proceeds, not to determine whether the sale of the underlying property was valid. *BMG Music v. Martinez*, 74 F.3d 87, 89 n.3 (5th Cir. 1996). Second, Appellees assert mootness because the proceeds have been distributed and Cal-Bay never sought a stay.[5] "An appeal may be dismissed when an appellant has made no effort to obtain a stay and has permitted 'such a comprehensive change of circumstances to occur as to render it inequitable' for the appellate court to reach the merits of the appeal." *In re Crystal Oil Co.*, 854 F.2d 79, 82 (5th Cir. 1988). Nevertheless, a stay of a bankruptcy court's action is not a *per se* requirement for relief on appeal. *Id.* In this case, there has been no such comprehensive change of circumstances as to render a remedy inequitable. If Appellees' appeal is successful, the court can fashion effective relief by issuing a judgment against Dr. Atac for the proceeds.

## III. DISCUSSION

We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court. *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). Generally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo. Id.* This court reviews a grant of summary judgment *de novo. Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

---

[5] Appellees also contend that the appeal is equitably moot because the proceeds have been distributed. This claim is meritless. Equitable mootness only applies to confirmed plans, not to sales outside the ordinary course of business. *See In re Pacific Lumber*, 584 F.3d 229, 240 (5th Cir. 2009); *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008).

5

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## A.

Issue preclusion, also referred to as collateral estoppel, prevents the same parties or their privies from relitigating issues that were litigated and decided in a prior action. A bankruptcy court's decision to give preclusive effect to a state court judgment is a question of law that we review *de novo. In re Keaty*, 397 F.3d 264, 269 (5th Cir. 2005). "[T]he preclusive effect of prior state court proceedings on federal proceedings is determined by the treatment those state court proceedings would receive in the courts of the state . . . in which those prior proceedings were held." *Norris v. Hearst Trust*, 500 F.3d 454, 460-61 (5th Cir. 2007). Technically, instead of the federal rule of collateral estoppel, the bankruptcy court should have applied Utah law. In Utah, the party seeking to invoke the doctrine of collateral estoppel must satisfy four requirements:

> First, the party must show that the issue challenged in the case at hand is identical to the issue decided in the previous action. Second, the issue in the previous action must have been decided in a final judgment on the merits. Third, the issue in the previous action must have been competently, fully, and fairly litigated. Fourth, the opposing party in the action at hand must have been either a party or privy to the previous action.

*Sevy v. Security Title Co.*, 902 P.2d 629, 632 (Utah 1995).

The bankruptcy court held that two previous decisions estopped this litigation: the Utah Judgment and a 1996 bankruptcy court hearing. As to the preclusive effect of the Utah Judgment, Cal-Bay correctly contends that the Utah court did not render judgment on the issue here at hand. The Utah Judgment did not determine who had title to the mortgage, but simply whether Doherty was authorized to assign the mortgage to Dr. Atac under Utah corporate

law.[6]  Thus, "the [Utah] Court concludes that Doherty's actions on behalf of KMI in [assigning the mortgage] were authorized, proper and legitimate in every respect."  The Utah Judgment is not dispositive in determining the relative priorities between Atac and Ararat, a task that would require applying Florida real property law.

The bankruptcy court also relied on its alleged earlier ruling emanating from Supertrail's motion to sell the property free and clear of liens and outside the ordinary course of business, which the court heard on October 18, 1996. Unfortunately, there is no written order reflecting that the court adjudicated at that time the respective claims of KMI and Dr. Atac to the mortgage.  The docket sheet references no transcripts or affidavits, nor does the order authorizing the sale deal with this issue.  The bankruptcy court's recollection, many years later, that KMI was served and failed to appear and that it did rule for Dr. Atac is a slender reed on which to hang estoppel.  Even more troubling, by the time of the October 18, 1996 hearing, KMI had assigned the mortgage to Ararat, but Ararat evidently was not informed of the hearing even if KMI was served with notice. With the record offering no assurance that KMI or Ararat was properly served with notice, or deliberately defaulted, or that KMI suffered an actual adverse adjudication by the bankruptcy court, we may not hold Cal-Bay, as Ararat's successor, bound to an undocumented October 18, 1996 bankruptcy court order.

**B.**

At this point, we could reverse and remand to the bankruptcy court for resolution of the ultimate issue, but judicial efficiency mandates our disposing of the case at last. No facts are in dispute.  If Ararat was a bona fide purchaser for value without notice, then Ararat might have had superior property rights

---

[6] As the Utah court stated: "At the heart of KMI's claims for relief based on common law fraud and the shareholder consent statute is its assertion that Doherty, as KMI's sole officer and director, was not authorized by Schwenke, who is alleged to have been KMI's sole shareholder, to assign [the mortgage] to Atac."

to the mortgage, which would have accrued to Cal-Bay as successor in title. In their motion for summary judgment, however, the Appellees argued that as a matter of law Ararat could not be a bona fide purchaser because the Palm Beach County property records gave Ararat constructive notice of the KMI lawsuit in Utah.

Florida law governs whether Ararat was a bona fide purchaser. *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). To be a bona fide purchaser for value without notice in Florida, a party must satisfy three conditions. "The purchaser must have (1) acquired the legal title to the property in question, (2) paid value therefore, and (3) been innocent of knowledge of the equity against the property at the time when consideration was paid and title acquired." *DGG Development Corp. v. Estate of Capponi*, 983 So.2d 1232, 1234 (Fla. Dist. Ct. App. 2008). The Appellees' motion for summary judgment only challenges whether Ararat had constructive notice of the KMI litigation based on the Palm Beach County property records. Property records provide "constructive notice to subsequent purchasers, not only of its own existence and contents, but also of any other fact concerning the instrument that would have been ascertained from the record if it had been examined and if inquiries suggested by it had been prosecuted." *Id.* at 1235. Thus, subsequent purchasers have a duty of due diligence. "If a person has information that would lead a reasonable man to make further inquiry for his own protection, but fails to further investigate and learn what the inquiry would reasonably have uncovered, the person must suffer the consequence of his neglect." *Starlines Int'l Corp. v. Union Planters Bank*, 976 So.2d 1172, 1177 (Fla. Dist. Ct. App. 2008) (citation and quotation omitted).

When KMI assigned the mortgage to Ararat on June 5, 1996, the Palm Beach County property records contained three pertinent entries:

1.  Assignment of Mortgage from KMI to Dr. Atac dated February 28, 1995;

2.  Notice of Invalid Assignment of Mortgage by KMI dated July 10, 1995;

3.  Judgment from the Utah court dated March 26, 1996, which states that Assignment of Mortgage from KMI to Dr. Atac was "null and void and wholly ineffective for any purpose . . . ."

The question is whether these entries "would lead a reasonable man to make further inquiry for his own protection[?]" *Id.* The answer is yes.

The property records made Ararat aware of the KMI litigation and Dr. Atac's potential property interest in the mortgage. While the Utah Judgment appears to invalidate the assignment to Dr. Atac, judgments are often appealed and reversed. A reasonable person would have researched further to determine whether the Utah Judgment was truly final or whether it was on appeal, especially because Ararat purchased the mortgage only two months after the Utah judgment was issued. Moreover, a simple inquiry to the Utah court would have revealed that the Utah Judgment was not yet final and that Doherty had moved to set it aside. Several additional features of the Utah Judgment would also prompt further inquiry. First, Dr. Atac, the mortgage transferee, was not a party to the KMI litigation. Consequently, the Utah judgment does not order Dr. Atac to assign the mortgage back to KMI. Second, it is not clear that the Utah court had jurisdiction over Dr. Atac. Third, the Utah court does not make a title determination at all. It does not analyze Florida property law, or determine whether Dr. Atac himself might have been a bona fide purchaser from KMI for value without notice. All these loose ends dangling from the Utah judgment begged for further investigation by any reasonable assignee in Ararat's position. Ararat plainly had constructive notice of Dr. Atac's competing property interest and could not qualify as a bona fide purchaser for value without notice. Cal-Bay, coming on the scene nine years later, also cannot qualify as a BFP.

## IV. CONCLUSION

Cal-Bay was not collaterally estopped from pursuing this litigation. Nevertheless, we affirm the judgment because Ararat had constructive notice as a matter of law from the Palm Beach County property records that Dr. Atac potentially retained his property rights in the mortgage. Ararat could not have been a bona fide purchaser for value without notice of the cloud on title.

**AFFIRMED.**