DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**2000 PRESIDENTIAL WAY, LLC,**
Appellant,

v.

**THE BANK OF NEW YORK MELLON, FIRST BANKS, INC.,** and
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,**
Appellees.

No. 4D20-1811

[August 4, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Susan R. Lubitz, Judge; L.T. Case No. 502019CA009490.

Gregory Bryl, Sunny Isles Beach, for appellant.

Nancy M. Wallace of Akerman LLP, Tallahassee, William P. Heller of Akerman LLP, Fort Lauderdale, and Eric M. Levine of Akerman LLP, West Palm Beach, for appellee The Bank of New York Mellon.

No appearance for appellee First Banks, Inc.

No appearance for appellee Mortgage Electronic Registration Systems.

GROSS, J.

2000 Presidential Way, LLC, appeals a final declaratory judgment determining that it took title to certain real property at issue "subject, and with an inferior interest, to the mortgage, assignment of mortgage and all modifications thereof."

We affirm the final judgment, concluding that (1) Presidential had constructive notice of the assignment of mortgage because the assignment was recorded in compliance with the requirements of section 695.11, Florida Statutes (2012), and (2) the warning in the recorded mortgage placed Presidential on notice that further inquiry was necessary to determine the existence of any modifications to the loan secured by the mortgage.

***Facts***

Maria Gutierrez took title to the subject property in 1997. She encumbered the property in 2005 with an $89,000 mortgage in favor of Mortgage Electronic Registration Systems ("MERS") as nominee for First Bank d/b/a First Bank Mortgage ("First Bank"). The mortgage was recorded in 2005 in the Official Records of Palm Beach County. The mortgage states that it "secures to Lender . . . the repayment of the Loan, and all renewals, extensions and modifications of the Note[.]"

As nominee for First Bank, MERS assigned the mortgage to The Bank of New York Mellon ("BONY") in 2012. The assignment of mortgage, which contains the property's legal description, was recorded in June 2012 in the Official Records of Palm Beach County. The assignment of mortgage was not indexed in the name of the borrower, Ms. Gutierrez. Rather, it was indexed in the names of MERS and BONY, as the grantor and grantee.

Ms. Gutierrez executed loan modification agreements in June 2009 and November 2015, but the modifications were not recorded.

In 2018, the property's condominium association commenced an action to foreclose an assessments lien. BONY was not a party to the foreclosure action, nor was the mortgage foreclosed in that lawsuit. Following the entry of a final judgment of foreclosure, a certificate of title was issued to Terano Financial LLC ("Terano").

Terano conveyed title to Presidential in 2019. Neither Terano nor Presidential contacted BONY about the status of the mortgage lien or the amounts it secured.

Shortly after taking title to the property, Presidential commenced the instant action for declaratory relief against First Bank.[1] A default was entered against First Bank. Presidential later added MERS as a defendant. In a second amended complaint, Presidential alleged that it was a purchaser for value and that the defendants violated section 701.04, Florida Statutes, by failing to timely provide an estoppel letter at the request of Presidential's predecessor-in-interest, Terano. Presidential sought a declaration that the principal balance of the mortgage could not exceed the $89,000, the face amount on the recorded mortgage. Presidential also sought an award of attorney's fees and costs.

---

[1] The complaint named First Banks, Inc., as the defendant, alleging that First Banks was formerly known as First Bank. However, this opinion will refer to the entity as "First Bank."

MERS was voluntarily dismissed from the action.

Presidential moved for summary judgment based on First Bank's alleged violation of section 701.04. BONY then intervened as a defendant to the action and answered the second amended complaint. The parties filed a joint pretrial stipulation in which they stipulated to most of the key facts.

The trial court denied Presidential's motion for summary judgment, and the case proceeded to a bench trial. The record does not contain a transcript of the trial, but the clerk's notes indicate that each side called a single witness. Presidential offered no documents into evidence, while BONY entered nine exhibits into evidence.

Following the trial, the trial court entered a final declaratory judgment in favor of BONY. The court concluded that Presidential was on notice of the assignment of mortgage to BONY when it took title in 2019, reasoning that the assignment of mortgage to BONY was recorded in 2012 and became "notice to all persons" at that time pursuant to section 695.11, Florida Statutes. The court further concluded that the language of the mortgage put Presidential on notice that "the mortgage loan may have been modified," which imposed a duty on Presidential to inquire further. The court emphasized that Presidential failed to inquire with BONY as to the status of the mortgage lien or the amounts it secured. The trial court concluded that Presidential "took title to the property subject, and with an inferior interest, to the mortgage, assignment of mortgage and all modifications thereof." This appeal ensued.

### The Circuit Court Properly Entered Declaratory Judgment in Favor of BONY Because the 2012 Assignment of Mortgage was Recorded in Compliance with Section 695.11, Florida Statutes, and the 2005 Mortgage Placed Presidential on Notice that Further Inquiry was Necessary to Determine the Existence of any Modifications

On appeal, Presidential raises four interrelated arguments.[2] First, Presidential argues that a wild deed or assignment cannot constitute either

---

[2] Presidential does not challenge the findings of fact set forth in the final judgment, which were all drawn from the pretrial stipulation and the exhibits contained in the record. Thus, despite the lack of a trial transcript, this court may review the trial court's conclusions of law to determine whether any errors appear on the face of the final judgment. *See Martin v. Martin*, 43 So. 3d 195, 196 (Fla. 4th DCA 2010) ("Where the record contains no transcript of the trial,

actual or constructive notice to the public. Second, Presidential argues that indexing the recorded assignment of mortgage to First Bank was insufficient to provide notice where that name returns more than 2,000 results—in other words, Presidential argues that the recorded assignment of mortgage was "misindexed," which did not constitute actual or constructive notice so as to bind a subsequent bona fide purchaser for value. Third, Presidential contends that it is entitled to attorney's fees for BONY's failure to provide an estoppel letter required by statute. Fourth, Presidential asserts that the unrecorded terms of the mortgage modifications could not be incorporated by reference into the pre-existing 2005 mortgage.

For the reasons set forth below, we reject Presidential's arguments.

### *Analysis*

#### *A. Law on Notice*

The recording statute in Florida is a "notice" statute. *B.A. Mortg., LLC v. Baigorria*, 300 So. 3d 198, 200 (Fla. 4th DCA 2020); § 695.01(1), Fla. Stat. (2012). Notice may take three forms: (1) actual notice; (2) implied notice; and (3) constructive notice. *Baigorria*, 300 So. 3d at 200.

"Actual notice" means a party has "actual knowledge of the fact in question." *McCausland v. Davis*, 204 So. 2d 334, 335 (Fla. 2d DCA 1967). "Implied notice" means knowledge that is "inferred from the availability of a means of acquiring such knowledge when the party charged therewith had the duty of inquiry." *Id.* "Constructive notice" means knowledge that is inferred "by operation of law, as under a recording statute." *Id.* at 335–36.

A party is a bona fide purchaser for value when: "(1) the purchaser obtained legal title to the challenged property, (2) the purchaser paid the value of the challenged property, and (3) the purchaser had no knowledge of the claimed interest against the challenged property at the time of the transaction." *Harkless v. Laubhan*, 278 So. 3d 728, 733 (Fla. 2d DCA 2019). By contrast, a party "with notice of a prior interest takes the property subject to that interest." *Baigorria*, 300 So. 3d at 201.

---

an appellate court can address only errors that appear on the face of the final judgment.").

## B. Wild Deed Argument

Presidential's first argument is that a wild deed or assignment cannot constitute either actual or constructive notice to the public. However, the underlying basis of this argument is invalid because the assignment of mortgage in this case is not wild.

"A wild deed is a purported instrument of conveyance executed by the named grantor knowing that he or she has no title of any kind to the property described therein." *Frazier v. Goszczynski*, 161 So. 3d 542, 543 (Fla. 5th DCA 2014). A wild deed can also refer to a "recorded deed that does not appear to be in the chain of title because a previous conveyance in the chain of title was either not recorded or not properly indexed." *Deed*, Black's Law Dictionary (11th ed. 2019).

Here, the assignment of mortgage is not wild under either definition. The original mortgagee was MERS as nominee for First Bank. MERS assigned the mortgage to BONY in May 2012, and the assignment of mortgage was recorded in June 2012. Thus, the assignment of mortgage was in the chain of title and was made by a grantor with authority to assign the mortgage.

## C. Indexing Argument

Presidential's main complaint is not with the recording of the assignment of mortgage, but rather with the indexing. Presidential complains that any search of the public records in Palm Beach County by the name First Bank would yield over 2,000 results and that "it is not reasonable to require a party to parse through over 2,000 records just to discover if there has been a potential assignment of a given mortgage."

Presidential's argument is without merit. "All instruments which are authorized or required to be recorded in the office of the clerk of the circuit court . . . which are filed for recording . . . shall be deemed to have been officially accepted by the said officer, and officially recorded, at the time she or he affixed thereon the consecutive official register numbers . . . and **at such time shall be notice to all persons**." § 695.11, Fla. Stat. (2012) (emphasis added). Assignments of mortgages are authorized to be recorded in the official records. § 28.222(3)(a), Fla. Stat. (2012). "The index shall be limited to grantor and grantee names, party names, date, book and page number, comments, and type of record." § 28.2221(2), Fla. Stat. (2012).

"[I]ndexing [i]s not an essential element of recording." *Mayfield v. First City Bank of Fla.*, 95 So. 3d 398, 402 (Fla. 1st DCA 2012). Priority is determined by section 695.11 and is not contingent upon indexing. *Id.* "[W]hen a party complies with the recording statute, constructive notice attaches and will not be destroyed by errors committed by the clerk." *Id.* at 401.

In this case, Presidential does not dispute that the assignment of mortgage was properly recorded. This is fatal to its argument. Priority is not contingent upon indexing. Any alleged "misindexing" of the recorded assignment of mortgage does not preclude constructive notice of the document. Because the recorded assignment of mortgage complied with the recording statute, constructive notice attached and will not be destroyed by purported errors in indexing.

Presidential's reliance upon *Oz v. Countrywide Home Loans, Inc.*, 953 So. 2d 619 (Fla. 3d DCA 2007), and *United States v. One Parcel of Real Estate*, 715 F. Supp. 360 (S.D. Fla. 1989), is misplaced because those cases did not involve the requirements of recording an assignment of mortgage under section 695.11. Instead, the cases concerned whether a recording of a notice of lis pendens—which is governed by section 48.23, Florida Statutes—provided sufficient notice of the claims at issue. *See Oz*, 953 So. 2d at 619 (affirming order dissolving lis pendens "because the lis pendens, which did not contain the date of the institution of an action and incorrectly listed the name of a defendant, did not provide constructive notice of Oz's claims in violation of section 48.23, Florida Statutes"); *One Parcel*, 715 F. Supp. at 362–63 (holding that purchasers of real property without actual notice that the Government had filed a lis pendens against such property fell within the "innocent owners" exception to a federal forfeiture statute).

Because the assignment of mortgage was recorded in accordance with section 695.11, nothing more was required. The recorded assignment of mortgage provided constructive notice to the public, regardless of any alleged improper indexing.

*D. Estoppel Letter Argument*

Presidential next argues that BONY's failure to provide an estoppel letter violated section 701.04, Florida Statutes (2019), entitling Presidential to attorney's fees for having to resort to litigation to obtain the required estoppel amount. Because BONY was not a noticed assignee, the argument goes, Presidential's (or its predecessor's) request for an estoppel letter with respect to the 2005 mortgage was valid under section 701.04.

6

Such argument is without merit, because BONY was the mortgagee and no estoppel request was ever sent to BONY.

Section 701.04(1) states that, "[w]ithin 14 days after receipt of the written request of a mortgagor" or "a record title owner of the property," "the holder of a mortgage shall deliver or cause the servicer of the mortgage to deliver to the person making the request . . . an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage." § 701.04(1), Fla. Stat. (2019). Subsection (2) states that "[i]n the case of a civil action arising out of this section, the prevailing party is entitled to attorney fees and costs." § 701.04(2), Fla. Stat. (2019).

Here, BONY did not violate section 701.04 because no estoppel request was ever sent to BONY. First, as explained above, Presidential had constructive notice of the recorded assignment of mortgage to BONY. Second, the parties' pretrial stipulation established that neither Presidential, nor its predecessor, inquired with BONY as to the status of the mortgage lien prior to taking title. Finally, Presidential did not introduce any written estoppel request into evidence at trial—in fact, Presidential offered no documents into evidence at all. In short, there is no record evidence that BONY received an estoppel request so as to trigger a duty under section 701.04 to provide an estoppel letter.

*E. Unrecorded Modification Argument*

Lastly, Presidential argues that the unrecorded terms of the mortgage modifications could not be incorporated by reference into the pre-existing 2005 mortgage and were not enforceable against a bona fide purchaser for value who never had notice of those terms. To hold otherwise, Presidential contends, would allow a lienholder to demand arbitrary amounts from a third-party purchaser by relying on a purported unrecorded modification of the mortgage.

"[T]he law is clear that if a recorded mortgage is valid on its face, a subsequent purchaser is assumed to have recognized it as a valid lien against the property which he is buying." *CCM Pathfinder Palm Harbor Mgmt., LLC v. Unknown Heirs of Gendron*, 198 So. 3d 3, 7 (Fla. 2d DCA 2015) (internal quotation marks omitted). "Thus, a purchaser who takes title to property subject to a prior recorded mortgage is estopped from contesting the validity of the mortgage." *Id.* (internal quotation marks omitted).

7

To be sure, Presidential is correct that the doctrine of incorporation by reference is generally limited to documents that actually exist at the time of the incorporation. *See, e.g., Gilbert St. Devs., LLC v. La Quinta Homes, LLC*, 94 Cal. Rptr. 3d 918, 924 (Cal. Ct. App. 2009). As one judge put it: "Incorporation by reference pulls existing material into the new, incorporating contract; it does not push material terms into nonexistent, as-yet-unassented-to future contracts." *TD Auto Fin. LLC v. Reynolds*, 842 S.E.2d 783, 794–95 (W. Va. 2020) (Hutchison, J., concurring).

However, the issue here is not whether the 2005 mortgage incorporated by reference the 2009 and 2015 modifications. Rather, the issue is whether the recorded mortgage, which stated that it would secure future modifications,[3] placed prospective purchasers on notice to investigate whether such modifications had been executed. "If a person has information that would lead a reasonable man to make further inquiry for his own protection, but fails to further investigate and learn what the inquiry would reasonably have uncovered, the person must suffer the consequence of his neglect." *Flanigan's Enters., Inc. v. Shoppes at 18th & Commercial, Inc.*, 954 So. 2d 758, 764 (Fla. 4th DCA 2007) (internal quotation marks omitted).

Crucial to this case is whether the recorded mortgage contained information that triggered Presidential's obligation to make further inquiry. In *Starlines International Corp. v. Union Planters Bank, N.A.*, 976 So. 2d 1172 (Fla. 4th DCA 2008), this court addressed whether a second promissory note's "dragnet clause," which purported to secure pre-existing debt, was enforceable against a subsequent purchaser of an interest in the property, where the recorded mortgage referenced the second promissory note but did not reference the first promissory note. We applied the following rule:

> As it relates to pre-existing debt, a dragnet clause will not be enforced against someone other than the borrower unless the dragnet clause specifically identifies the pre-existing debt to be included within its terms or unless it can be shown that the third party otherwise had notice that the specific pre-existing debt at issue was to be included within the grasp of the dragnet clause.

---

[3] Section 697.04(1)(a), Florida Statutes (2005), states that a mortgage on real property "may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances . . . as are made within 20 years from the date thereof . . . ."

8

*Id.* at 1176.

Although it was undisputed that the dragnet clause did not identify any specific pre-existing debt, we held that the purchaser "did have information from [the second promissory note] that there *may* be pre-existing debt secured by the mortgage, and thus had a duty to inquire further." *Id.* at 1177. However, we also noted that the purchaser "did not fail to investigate further," as the purchaser "did inquire of [the borrower] as to the existence of pre-existing debt and received a negative response." *Id.* Accordingly, we held that there was a genuine issue of material fact as to the sufficiency of the purchaser's inquiry, and thus as to whether the purchaser was on implied actual notice that the first promissory note was secured by the mortgage. *Id.*

Here, the mortgage states that it secures "the repayment of the Loan, and all renewals, extensions and modifications of the Note[.]" Similar to the situation in *Starlines*, Presidential had information from the recorded mortgage that there may have been modifications of the note secured by the mortgage, and thus had a duty to inquire further. Unlike *Starlines*, however, there is no record evidence that Presidential investigated further. Had Presidential undertaken an inquiry with BONY (or perhaps even the borrower) as to the status of the mortgage lien, such an inquiry would reasonably have uncovered the modifications. Thus, because Presidential had a duty to inquire as to any possible modifications to the loan and failed to do so, Presidential had implied notice of the modifications.

### Conclusion

For these reasons, we affirm the final judgment.

*Affirmed.*

CONNER, C.J., and WARNER, J., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**

9